UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                           Case No. 16-20437

JACKLYN PRICE,

    Defendant.
_____/

**OPINION AND ORDER DENYING DEFENDANT'S AMENDED MOTION TO VACATE SENTENCE, DENYING DEFENDANT'S MOTION TO APPOINT COUNSEL, AND DENYING A CERTIFICATE OF APPEALABILITY**

Defendant Jacklyn Price moves to vacate her sentence under 28 U.S.C. § 2255, (ECF No. 252), and moves to appoint counsel. (ECF No. 286.) She argues her attorney's performance constituted ineffective assistance of counsel. The matter has been thoroughly briefed. (ECF Nos. 267, 269, 278, 293.) The court has reviewed the record and does not find a hearing to be necessary. E.D. Mich. L.R. 7.1(f)(2). For the reasons described below, Defendant's motions will be denied.

**I.  BACKGROUND**

Defendant was charged with health care fraud conspiracy, 18 U.S.C. § 1349, conspiracy, 18 U.S.C. § 371, and health care fraud, 18 U.S.C. § 1347, for her alleged participation in a scheme to defraud Medicare. (ECF No. 1, PageID.33, 37, 40.) Defendant was initially provided court-appointed counsel. (ECF No. 28.)

Ten months later, on April 18, 2017, Defendant entered a plea of guilty through a Rule 11 Plea Agreement. (ECF Nos. 50, 151.) Defendant admitted to conspiring with

her co-defendants to create false Medicare claims, and pleaded guilty to violations of 18 U.S.C. § 1349 for conspiracy to commit health care fraud and 18 U.S.C. § 1347 for health care fraud. (*Id.*, PageID.241, 244.)

After the plea hearing, but before sentencing, Defendant's counsel filed a motion to withdraw. (ECF No. 192.) The court granted the motion and a second attorney was appointed. (ECF Nos. 201, 210.) Defendant's second attorney filed a sentencing memorandum and appeared on behalf of Defendant at her sentencing hearing. (ECF No. 239; ECF No. 260, PageID.2746.)

At sentencing on November 14, 2018, the court imposed eighty months imprisonment for both Defendant's offenses. (ECF No. 241, PageID.2347.) The sentences ran consecutively, totaling 160 months. (*Id.*) Defendant was also ordered to pay $6,350,332 in restitution. (*Id.*, PageID.2351.)

Defendant did not appeal her sentence or her underlying conviction. (ECF No. 252, PageID.2691.) However, on March 18, 2019, she filed a motion to vacate her sentence under 28 U.S.C. § 2255. (ECF No. 252.) Defendant claims she was denied effective assistance of counsel and lists ten separate grounds. (*Id.*, PageID.2703-2711.) The government responded, and she filed two replies which added new arguments. (ECF Nos. 269, 278.) The court construed the replies jointly as an Amended Motion to Vacate and provided the government a chance to respond. (ECF No. 287.) The government has filed an amended response.[1] (ECF No. 293.)

---

[1] Since that time, Defendant has submitted two letters to the court. (ECF Nos. 318, 322.) The letters do not offer additional substantive arguments and the court will disregard them. Defendant is instructed to avoid sending letters to the court. Litigants may address the court only in motions or briefs.

## II.  STANDARD

Title 28 U.S.C. § 2255 allows federal prisoners to challenge their sentence. The prisoner must show that his or her "sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). The Sixth Circuit has clarified that § 2255 provides three bases for relief: "(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid." *Moss v. United States*, 323 F.3d 445, 454 (6th Cir. 2003) (quoting *Weinberger v. United States*, 268 F.3d 346, 351 (6th Cir. 2001)).

Ineffective assistance of counsel, guaranteed under the Sixth Amendment's right to counsel, is a valid basis for suit under § 2255. *Massaro v. United States*, 538 U.S. 500, 504 (2003). Such a claim falls into the first § 2255 category, errors of constitutional magnitude. *United States v. Doyle*, 631 F.3d 815, 817 (6th Cir. 2011) (citing *Pough*, 442 F.3d at 964; *Griffin v. United States*, 330 F.3d 733, 736 (6th Cir. 2003)). In order to prevail on a claim for ineffective assistance of counsel, the prisoner-defendant "must show that counsel's performance was deficient" and "that the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

For counsel to be "deficient," representation must "[fall] below an objective standard of reasonableness." *Id.* at 688. "[T]rial counsel's tactical decisions are particularly difficult to attack." *O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994). "Judicial scrutiny of counsel's performance must be highly deferential, and a court must

3

indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. Strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Knowles v. Mirzayance*, 556 U.S. 111, 124 (2009) (quoting *Strickland*, 466 U.S. at 689-90).

To show that an attorney's performance "prejudiced the defense," "the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694; *Hall v. Vasbinder*, 563 F.3d 222, 237 (6th Cir. 2009).

It is the prisoner's burden to prove his or her claim by a preponderance of the evidence. *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006) (citing *McQueen v. United States*, 58 F. App'x 73, 76 (6th Cir. 2003)). The prisoner must come forward with verifiable allegations of fact sufficient to support an entitlement to relief. *Green v. Wingo*, 454 F.2d 52, 53 (6th Cir. 1972); *O'Malley v. United States*, 285 F.2d 733, 735 (6th Cir. 1961); *Loum v. Underwood*, 262 F.2d 866, 867 (6th Cir. 1959). Mere legal conclusions are inadequate. *O'Malley*, 285 F.2d at 735; *Loum*, 262 F.2d at 867. A prisoner is not entitled to relief when "allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Valentine v. United States*, 488 F.3d 325, 333 (6th Cir. 2007) (quoting *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999)).

The standard for holding an evidentiary hearing is similar. "Where there is a factual dispute, the *habeas* court must hold an evidentiary hearing to determine the truth of the petitioner's claims." *Martin v. United States*, 889 F.3d 827, 832 (6th Cir. 2018)

(quoting *Turner v. United States*, 183 F.3d 474, 477 (6th Cir. 1999)). Further, "[w]hen a defendant presents an affidavit containing a factual narrative of the events that is neither contradicted by the record nor inherently incredible and the government offers nothing more than contrary representations to contradict it, the defendant is entitled to an evidentiary hearing." *Id.* (quoting *Huff v. United States*, 734 F.3d 600, 607 (6th Cir. 2013)).

### III. DISCUSSION

Defendant raised ten separate grounds for relief in her original motion and added more claims in her replies. All of Defendant's claims are brought against her first attorney. (ECF No. 269, PageID.3015.) They are largely repetitive and can be consolidated into four major categories of allegations: (1) her attorney did not disclose the defense strategy to Defendant; (2) the attorney failed to investigate and challenge the loss amount attributed to Defendant's fraud; (3) the attorney did not review and challenge Defendant's Presentence Report ("PSR"); and (4) the attorney improperly negotiated Defendant's plea agreement. Each category will be addressed in turn. The court will then discuss Defendant's requests for appointment of counsel and the issuance of a certificate of appealability.

#### A. Disclosure of Strategy

Defendant first asserts that her attorney "failed to disclose her strategy for representing [Defendant]" and that this failure "resulted in a longer sentence." (ECF No. 252, PageID.2703.) Specifically, Defendant points to the attorney's alleged inability to inform Defendant of the strategy for rebutting the loss amount attributed to Defendant's fraud scheme. (*Id.*)

The only basis for the court to judge this claim is Defendant's own assertion in her brief. She provides no specific factual allegations "upon which to test the validity of [her] conclusions." *Green*, 454 F.2d at 53. Defendant does not detail a timeline of failed communication or note a third party who can testify in her support. Instead, she states that her attorney "never []disclosed to petitioner what [the] strategy was." (ECF No. 252, PageID.2703.) Defendant is on record at her plea hearing asserting quite the opposite. The court asked if she understood that her attorney was expected to have discussed the case with her and had a responsibility to "provide[] [the attorney's] best knowledge, "answer[] [Defendant's] questions[,] and tell [her] what [the attorney] thinks is likely the best outcome." (ECF No. 151, PageID.810-11.) Defendant indicated that she understood those expectations and that her attorney had met them. (*Id.*, PageID.811, 832.) When the court asked her directly whether she was "satisfied with [her] attorney, [the attorney's] explanation, [the attorney's] willingness to answer questions, and [the attorney's] ability to prepare [Defendant] for this decision [to take a plea]," Defendant answered "very." (*Id.*, PageID.837.) The allegations in Defendant's § 2255 motion are directly contradicted by the record. *Valentine*, 488 F.3d at 333.

Even if Defendant were to demonstrate that her attorney did not communicate the defense strategy, there is no legal basis for finding that the attorney's actions amounted to ineffective assistance of counsel. It is true that counsel has "duties to consult with the defendant on important decisions and to keep the defendant informed of important developments in the course of prosecution." *Strickland*, 466 U.S. at 688; *Miller v. Straub*, 299 F.3d 570, 579-81 (6th Cir. 2002). However, Defendant does not assert that her attorney failed to keep her abreast of developments in the case or inform

6

her of any major decision Defendant needed to make, such as whether to accept a plea. *Cf. Young v. Westbrooks*, 702 F. App'x 255, 264 (6th Cir. 2017) (noting that an attorney's alleged failure to communicate with his client in any way could constitute ineffective counsel); *Howard v. United States*, 743 F.3d 459, 468 (6th Cir. 2014) (citation omitted) ("Counsel has an ethical obligation to keep the client reasonably informed about the status of a matter and promptly to comply with reasonable requests for information. An attorney cannot . . . ignore a defendant completely"). Defendant lacks a substantiated legal argument that her attorney violated a duty to disclose legal strategy to the point of being defective. *Strickland*, 466 U.S. at 687.

Most significantly, there is no indication that if her attorney provided Defendant with a detailed description of the defense strategy the proceedings' outcome would have been different. *Strickland*, 466 U.S. at 694. Defendant appears to indicate, in conclusory fashion, that greater discussion would have resulted in her attorney following Defendant's suggested strategies. However, Defendant does not detail these alleged other strategies. She does not put forward any factual basis to support the claim that she would have suggested new strategies to her attorney, that the attorney would have followed the strategies, or that the strategies would have made any impact on her decision to plead guilty or her sentence. Defendant, when under oath at the plea hearing, provided strong and positive statements regarding her attorney's performance; she was able to rely on a different attorney for two months prior to sentencing. Defendant has not alleged sufficient facts to prove prejudice. *Valentine*, 488 F.3d at 333; *Strickland*, 466 U.S. at 694.

## B. Investigation and Challenge of Loss Amount

Defendant's motion includes numerous claims that her attorney failed to investigate the amount of loss attributed to Defendant's fraudulent conduct. (ECF No. 252, PageID.2703-08.) Defendant contends that her attorney should have (1) requested an evidentiary hearing, (2) investigated and introduced the articles of incorporation for a corporation associated with Defendant's fraud, (3) interviewed witnesses, and (4) generally investigated unspecified "evidence." Central to all of the arguments is the claim that Defendant's sentencing was based on an inflated amount of Medicare fraud. Her plea agreement and PSR held Defendant responsible for $8,888,721. (ECF No. 50, PageID.244.) Defendant claims that she is responsible for only a portion of that amount.

Defendant's allegations are not credible and are contradicted by the record. *Valentine*, 488 F.3d at 333. She now claims that the amount of loss is incorrect, but the record evidence shows Defendant's acceptance of the $8,888,721 amount. First, Defendant signed a plea agreement that included that amount. (ECF No. 50, PageID.244, 256.) The agreement also included a restitution amount of $6,350,332. (*Id.*, PageID.247.) By signing, Defendant acknowledged that she understood and agreed to the agreement's terms. (*Id.*, PageID.256.)

Second, at her plea hearing, Defendant affirmed her acceptance of the agreement. The court directly asked Defendant if she "want[s] to live by the terms of this agreement," to which Defendant replied "yes." (ECF No. 151, PageID.832.) The court went point by point through the agreement. When asked specifically whether she accepted the $8,888,000 amount, Defendant responded: "I didn't keep track of the monetary amount, but if that's what it was calculated, then I would say yes." (*Id.*,

8

PageID.847.) The court followed up and asked if Defendant had any reason to "differ significantly with the calculation." (*Id.*) Defendant responded: "No, not significantly." (*Id.*)

Third, two months after her attorney withdrew, Defendant did not contest the amount of loss at her sentencing hearing. Instead, Defendant assumed the existence of "this $9 million scheme or $6 million scheme," referring to the total amount loss and to the restitution amount, to argue for a lower sentence. (ECF No. 260, PageID.2770-71, 2766-67.)

Evidence to contradict the amount of loss Defendant, her attorney, and the government agreed were accurate is purely speculative. The conclusion that evidence would have proven a lower loss amount is equivalent to a "mere assertion of [her] innocence," which is inadequate to succeed on a § 2255 motion. *Martin*, 889 F.3d at 832. Defendant presents mere "suspicions of misconduct." *Jefferson v. United States*, 730 F.3d 537, 547 (6th Cir. 2013). Given the wide range of professional choices an attorney can make and the substantial deference provided under the *Strickland* standard, the court does not find counsel's performance deficient. *Strickland*, 466 U.S. at 687.

Prejudice is lacking as well. Defendant alleges insufficient facts to indicate that an investigation would have been fruitful and that anything discovered would have a "reasonable probability" of changing the outcome at sentencing. *Strickland*, 466 U.S. at 694. This is especially true given that her attorney stopped representing Defendant two months prior to sentencing and was not Defendant's counsel at the sentencing hearing. Defendant's second attorney argued in a sentencing memorandum that the loss amount over-represented the seriousness of Defendant's offense. (ECF No. 239, PageID.2327-

9

28.) He did so on the basis that Defendant did not substantially profit from the fraud, not that she lacked criminal liability for the amount of loss. (*Id.*) Thus, the court was presented with the argument that Defendant should not be held accountable for all of the loss amount and still sentenced Defendant to 160 months. Defendant does not present factual allegations sufficient to show her defense would have been any different had her attorney conducted further investigation while representing Defendant.

In her reply, Defendant asserts that the amount of loss was incorrect because she did not conspire with co-Defendant Mohammad Qazi. (*E.g.*, ECF No. 269, PageID.3023.) However, at her plea hearing, Defendant accepted that she was "in a conspiracy with others, including [her] co-[D]efendants, Muhammad Qazi and Millicent Traylor." (ECF No. 151, PageID.838-39.) She further admitted that she "received kickbacks and bribes from Mr. Qazi in exchange for his continuing to refer Medicare beneficiaries." (*Id.*, PageID.843.) This is in addition to Defendant's repeated statements where she accepted responsibility for the loss amount. (ECF No. 50, PageID.244, 247, 256; ECF No. 151, PageID.847; ECF No. 260, PageID.2770-71, 2766-67.) Defendant's assertion is contradicted by the record. *Valentine*, 488 F.3d at 333. It was not beyond the wide range of reasonable professional conduct for counsel to not conduct further investigation. *Strickland*, 466 U.S. at 687. Even if counsel did conduct an investigation, there are no credible assertions that Defendant was not conspiring with Qazi and that payments to made to him were not attributable to Defendant. The prejudice prong of *Strickland* has not been met. *Id.*

Defendant, in her reply, also contends the dollar amount of billings submitted for reimbursement is not the "intended loss" under U.S. Sentencing Guidelines Manual §

10

1B1.13 cmt. n.3(ii) (U.S. Sentencing Comm'n 2018). However, Defendant presents no verifiable assertions of fact that the amount she and her co-conspirators billed was not "the pecuniary harm that [they] purposely sought to inflict." *Id.*; *Valentine*, 488 F.3d at 333. Counsel was not deficient for focusing her time and energies on more pressing concerns, such as negotiating a favorable plea agreement, and there are no credible allegations of prejudice. *Strickland*, 466 U.S. at 687.

### C.  Review and Challenge of the PSR

Defendant argues that her counsel was ineffective for failing to thoroughly review the PSR with her. (ECF No. 252, PageID.2708.) The court specifically asked Defendant's (second) attorney at sentencing whether he "went over the [PSR] with [Defendant] and explained it to her and tried to ensure that she understood it," to which the attorney replied, "Yes." (ECF No. 260, PageID.2748-49.) Defendant does not contest the veracity of this statement. In addition, the PSR was completed on June 27, 2017, two months after Defendant signed her plea agreement. As is almost always the case, the guilty plea precedes the PSR. Defendant's contention is unsound to the extent that it alleges she would have refused the plea agreement—or that any other result would have occurred—if only her first attorney had reviewed the PSR more closely pre-plea. *Strickland*, 466 U.S. at 687.

Specifically, Defendant asserts that the amount of loss and her classification as holding a leadership role in the PSR were inaccurate. (ECF No. 252, PageID.2708, 2710.) Yet a worksheet prediction included in her plea agreement noted the amount of loss and a four-level aggravating role enhancement. (ECF No. 50, PageID.244, 247, 256, 257.) Defendant repeatedly accepted or did not contest the amount of loss in court

11

hearings. (ECF No. 151, PageID.847; ECF No. 260, PageID.2770-71, 2766-67.) Defendant does not present a valid claim for relief. *Strickland*, 466 U.S. at 687.

Defendant adds a more substantial argument in her reply that the aggravated role enhancement should not have applied because an individual who assisted her was not formally indicted. (ECF No. 269, PageID.3049.) However, a "participant" for purposes of the enhancement includes "a person who is criminally responsible for the commission of the offense, but need not have been convicted." U.S. Sentencing Guidelines Manual § 3B1.1 cmt. n.1; *see United States v. Lewis*, 68 F.3d 987, 989 (6th Cir. 1995). Whether an individual was indicted is not relevant to the inquiry. Defendant's claim is invalid.

### D. Negotiation of Plea Agreement

Defendant argues her counsel was ineffective "for failing to negotiate a plea [agreement] or thoroughly review it with her." (ECF No. 252, PageID.2718.) However, Defendant signed the plea agreement and attested that she "read . . . [the] entire document, underst[ood] it, and agree[d] to its terms." (ECF No. 50, PageID.256.) She agreed that she "had a full and complete opportunity to confer with her lawyer, and . . . had all of her questions answered by her lawyer." (*Id.*) At her plea hearing, each paragraph of the agreement was described in detail. (ECF No. 151, PageID.829-31.) The court then asked Defendant if she wished "to live by the terms of [that] agreement"; she responded "yes." (*Id.*, PageID.832.) Later in the hearing, Defendant agreed that she "had ample time to go over [the] agreement with [her] attorney," and "[i]f there were questions, [her attorney] answered them." (*Id.*) Defendant was asked if she was "satisfied with [her] attorney, [her attorney's] explanations, [her attorney's] willingness to

12

answer questions, and [her attorney's] ability to prepare [her] for [the] decision [to plead guilty]." (*Id.*, PageID.837.) Defendant responded, "[v]ery." (*Id.*)

In all, Defendant repeatedly affirmed on the record that she knowingly and intelligently consented to her plea agreement and its terms. Assertions to the contrary, years after the fact, are of no avail. Defendant's allegations are not credible and are contradicted by the record. *Valentine*, 488 F.3d at 333. Her claims are rejected.

### E. Appointment of Counsel

Defendant filed a motion for appointment of counsel. (ECF No. 286.) The court may appoint a counsel in a § 2255 proceeding if the "interests of justice so require." 18 U.S.C. § 3006A(a)(2). Defendant is not entitled to an evidentiary hearing and has not presented a valid claim for relief. *See Sellers v. United States*, 316 F. Supp. 2d 516, 522-23 (E.D. Mich. 2004) (Taylor, J.) (denying a request for appointment of counsel where "ineffective assistance claims [were] insufficient"). Her request for appointment of counsel will be denied.

### F. Certificate of Appealability

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability ("COA") is issued under 28 U.S.C. § 2253. A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citing *Barefoot v. Estelle*, 463 U.S. 880, 893 (1983)). In this case, the court

concludes that reasonable jurists would not debate the court's ruling. Therefore, the court will deny a certificate of appealability. 28 U.S.C. § 2253(c)(1)(B), (2).

## IV. CONCLUSION

Defendant presents several claims of ineffective assistance of counsel, all of which fail. The court will not appoint counsel or vacate Defendant's sentence. Accordingly,

IT IS ORDERED that Defendant's Amended Motion to Vacate Sentence (ECF Nos. 252, 269, 278) is DENIED.

IT IS FURTHER ORDERED that Defendant's Motion to Appoint Counsel (ECF No. 286) is DENIED.

Finally, IT IS ORDERED that a Certificate of Appealability is DENIED.

          s/Robert H. Cleland      /
          ROBERT H. CLELAND
          UNITED STATES DISTRICT JUDGE

Dated: October 27, 2020

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, October 27, 2020, by electronic and/or ordinary mail.

          s/Lisa Wagner      /
          Case Manager and Deputy Clerk
          (810) 292-6522

S:\Cleland\Cleland\JUDGE'S DESK\C2 ORDERS\16-20437.PRICE.MotiontoVacateandMotiontoAppointCounsel.RMK.RHC.2.docx